

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable John C. Marburger
County Attorney
Fayette County
La Grange, Texas

Dear Sir:

> Opinion No. 0-1110
> Re: Whether lessee of property
> abutting on a county road,
> having permission of owner
> of said abutting property
> and owner of the fee in the
> right-of-way has a right to
> build an underpass under the
> county road and whether motor
> vehicles must be registered
> under provisions of Article
> 6675a-2 in order to cross
> under the county road by way
> of said underpass.

Under date of October 16, 1939, you submit for the opinion of this Department the following questions which we quote from your letter:

> "A gravel company is the lessee of several tracts of land which are cut by a county public road. In mining this gravel it is necessary to cross the public road with large trucks that haul this gravel from the mine to their plant at the railroad track. The gravel company does not wish to buy licenses for for their trucks in order that they may thus cross the public road.

> "In view of the above facts I would like to have your early opinion in the following questions:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable John C. Marburger, Page 2

"'1.  May the gravel Co. legally
build an underpass under the public road
if it is so constructed that it will not
interfere with or endanger the traveling
public that wishes to use this public
road?

"'2.  If the gravel company may legal-
ly, construct such an underpass will they be
required to register their trucks as is
required by Article 6675a-2?'"

With reference to your first question as to the
right of an abutting property owner building a private under-
pass under a road right-of-way, you infer in your letter that
the public can only have an easement in said right-of-way.
We know of no rule or reason that would prevent the County or
State from owning a fee simple interest in the right-of-way.
We are assuming for purpose of this opinion that the public
only has an easement in the road right-of-way.  Nothing in
this opinion shall be construed as granting permission for the
construction of said underpass should the County or State have
an interest in the right-of-way other than an easement.

Although the County or State may have a dominant
easement in the road right-of-way, the title to the land and
all profits therefrom, not inconsistent with and subject to
the easement, remain in the owner of the soil.  Elliott, in
his work on Roads and Streets, Vol. 2, 4th Ed., 1142 says:

"Subject only to the public ease-
ment, the proprietor has all the usual
rights and remedies of the owner of a
freehold.  He may sink a drain below the
surface of the road, if proper care be
taken to cover it so that it shall remain
safe and convenient.  He may carry water
in pipes under the way, and he may mine
under it."

In Clutter v. Davis, et al., 62 S. W. 1107, the
Court of Civil Appeals cited with evident approval the doctrine
set out in Jackson v. Hathaway, 15 Johns (N. Y.) 447, 452; 8
Am. Dec. 263, which reads as follows:

"When the sovereign imposes a public
right-of-way upon the land of an individual

the title of the former owner is not ex-
tinguished; but is so qualified that it can
only be enjoyed, subject to that easement
The former proprietor still retains his
exclusive right in all mines, quarries
springs of water, timber and earth for
every purpose not incompatible with the
public right-of-way."

In Starr v. Camden, etc., R. R. Co., 24 N. J. Law,
597, it was held by the Supreme Court of New Jersey as follows:

"This easement (of a public highway)
does not comprehend any interest in the
soil, nor give the public the legal posses-
sion of it. The right of a freehold is
not touched by the establishing of a high-
way, but continues in the owner of the
land, in the same manner that it was before
the highway was established, subject to
easement. This principle is so universal-
ly recognized that it would seem to be a
work of supererogation to cite authorities
to sustain it; hence the owner of the soil
may lay water pipes, gas, or other pipes
below the surface, may excavate for a
vault or dig for mining purposes, and use
it in any other manner that does not interrupt
the free passage over it. He retains the
full possession of it, subject only to the
easement. He may fell the trees upon it,
cut the grass, or depasture it."

In Woodring v. Forks Township, 28 Pa. 361; 70 Am.
Dec. 134, Chief Justice Lewis, delivering the opinion of the
Court said:

"A man who owns soil on which the
public have a highway has a right to
enjoy his property in every way that may
promote his interest or convenience, so
that he takes care not to injure the public
easement. Sic utere tuo ut alienum non
loedas, is the maxim which applies in such
cases. He may cut a passage across the

Honorable John C. Marburger, Page 4

road for the purpose of draining his land,
or leading water to his mill, because the
land is his own, and he may use it for all
legitimate purposes."

In the Woodring case, supra, the Court held that
the fee owner of a road right-of-way had a right to construct
a mill race under the public road because the land was his to
use for all legitimate purposes so long as he did not injure
the public easement. For further authorities holding that
the fee owner of a public highway has a legal right to build
a mill race under said highway, see Dygert v. Schenck, 23
Wendell 445; 35 Am. Dec. 575 and Perley v. Chandler, 6 Mass.
453; 4 Am. Dec. 159.

In Colegrove Water Co. v. Hollywood, 151 Cal. 425;
13 L. R. A. (N. S.) 904; 90 Pac. 1055, the Court says:

"The owner of the fee of a city street
has the right to lay a water pipe for his
own use beneath the surface so far as he
can do so without impeding the public use,
and, for that purpose, may excavate the soil,
subject to such restrictions by the municipality
as will insure the least interruption to the
public easement."

As seen in the Colegrove case, supra, the owner of the fee in a
highway may have to obstruct the road temporarily in order to
lay a pipe across the road. This temporary obstruction is not
such as can be prohibited as an interference with the public
easement. The editor of 13 L. R. A. (N. S.) in a note to the
Colegrove case, supra, at page 905, says:

"It is a rule very generally followed
by all of the cases that, where the owner-
ship of the fee is in the abutting owner,
or in anyone other than the public, the
public itself has but a mere easement, and
cannot prevent the use of the property
under the surface by the owner of the fee.
And even a mere temporary inconvenience
to the public, such as a partial and tem-
porary obstruction of the highway, by the
owner of the fee, has been held not to be

Honorable John C. Marburger, Page 5

such a wrong to the public as may be
prevented by injunction."

The editor of 13 L. R. A. (N. S.), supra, continues:

"In speaking of the rights possessed
by an abutting owner, which may be used
to impair somewhat and for a time the
rights of the public in a highway, the
Court, in Clark v. Fry, 8 Ohio St. 358;
72 Am. Dec. 590, said: 'See, also, the
improvement, or building, or repair of
houses, and the construction of sewers,
cellars and drains, on adjacent lots,
often create necessary temporary impedi-
ments on public highways. These are not
invasions of, but simply incident to, or
rather qualifications of, the right-of-
way transit; the limitation upon them is
that they must not be unnecessarily and
unreasonably interposed or prolonged'."

In the case of Town of Glencoe v. Reed, 101 N. W.
956; 67 L. R. A. 901, the Supreme Court of Minnesota uses the
following language:

"It is quite evident from the trend
of American decisions that the only limita-
tion upon the rights of the owner of the
fee to control and use the soil and other
natural deposits within the limits of the
highway is that such use shall be consis-
tent with the full enjoyment of the public
easement."

Other cases holding the same doctrine might be
cited, but the rule that the owner of the land upon which a
public road is laid out has the exclusive use of the soil,
subject to the easement of the right of travel in the public,
and the incidental right of keeping the highway in proper re-
pair for the use of the public, is so well established that
the citation of other authorities is not necessary.

We conclude that the lessee of the gravel pit abutt-
ing on the county road, with the permission of the owner of

the fee in the road right-of-way, can legally build an underpass under said county road if it is so constructed that it will not interfere with or endanger the traveling public. The Commissioners' Court would have authority to supervise, in a reasonable manner, the construction of the underpass.

You inquire further as to the necessity of registering motor vehicles under the provisions of Article 6675a-2, Vernon's Annotated Statutes, in order for said vehicles to cross under a county road by way of said underpass. Article 6675a-2, supra, reads, in part, as follows:

> "Every owner of a motor vehicle, trailer or semi-trailer used or to be used upon the public highways of this State, and each chauffeur, shall apply each year to the State Highway Department through the County Tax Collector of the County in which he resides for the registration of each such vehicle owned or controlled by him. * * *"

Article 6675a-1 (m), Vernon's Annotated Statutes, defines a public highway as follows:

> "'Public Highway' shall include any road, street, way, thoroughfare or bridge in this State not privately owned or controlled for the use of vehicles over which the State has legislative jurisdiction under its police power."

It is plain that one who crosses under a county road by way of a private underpass is not using a motor vehicle "upon the public highway of this State". We conclude that motor vehicles need not be registered under provisions of Article 6675a-2, supra, in order to cross under a county road by way of said private underpass.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Glenn R. Lewis*

Glenn R. Lewis
Assistant

*Lee Shoptaw*

Lee Shoptaw

APPROVED NOV 20, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

LS:RS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN